BURROUGHS WELLCOME & CO. (U. S. A.) Inc., v. NION CORPORATION.

No. 3843.

District Court, S. D. California. Central Division.

May 31, 1945.

Joseph F. Westall, of Los Angeles, Cal., and Hauff & Warland, of New York City, for plaintiff.

William G. MacKay, of San Francisco, Cal., and Fred H. Miller, of Los Angeles, Cal., for defendant.

J. F. T. O'CONNOR, District Judge.

The plaintiff and defendant both claim ownership of a similar trademark, Avicap or Avicaps, and their right to register the same as a trademark for use on vitamin capsules.

It is admitted that the product manufactured by each is the same, but with slightly different word descriptions. The product of the plaintiff is: "a polyvitamin product containing six essential vitamins (A, D, $B_1$, $B_2$, C and nicotinic acid amide) encapsulated in gelatin".

The product of the defendant is: "a vitamin product containing 25,000 units of vitamin A encapsulated in gelatin".

This is a trial de novo. 35 U.S.C.A. § 63; Minnesota Mining and Manufacturing Co. v. Nichols, D.C., 28 F.Supp. 105.

The plaintiff first used the trademark Avicap and shipped its product under that name in interstate commerce prior to May 1, 1942, and on May 19, 1942 filed its application for registration of its trademark. The plaintiff alleges in its complaint, and the defendant admits: "That the plaintiff advertised said product and sold the same extensively throughout the entire United States from about May 1st, 1942, and is now selling said product under said trademark; and up to the present time the plaintiff has expended upwards of Fifteen Thousand ($15,000) Dollars in advertising, and the sales of said goods under said mark up to the present time amount to approximately Two Hundred and Fifty Thousand ($250,000) Dollars, and the individual vitamin capsules sold by the plaintiff from the time it placed said goods upon the market amount to 12,155,000."

The plaintiff, on or about May 19, 1942, filed an application in the United States Patent Office to register the word, Avicap, as a trademark for a polyvitamin product,

the serial number of which was No. 453,-098. The trademark was passed for publication without objection and published in the official Gazette of the U. S. Patent Office on July 28, 1942. No opposition to the application was filed.

After the time to oppose plaintiff's application for registration to the word Avicap had expired, and on or about August 29, 1942, the defendant filed in the U. S. Patent Office an application for registration to it of the word Avicaps, on capsules containing vitamin A. The label attached to said application was printed in Spanish.

The application of the defendant for registration of the word Avicaps for use on vitamin capsules containing vitamin A, was allowed by the Patent Office and published in the United States Official Gazette on October 12, 1942. The plaintiff filed a notice of opposition. On December 16, 1942, the Patent Office declared an interference, No. 3428, between the application of plaintiff, and the application of defendant filed August 29, 1942, Serial No. 455,-185.

The defendant, Nion Corporation, never sold or used any vitamin capsules in the United States under the name of Avicaps, but it had made in the United States and shipped to Havana, Cuba, several consignments of vitamin A capsules bearing the word Avicaps in Spanish.

The defendant corporation sold its vitamin A capsules in the United States under the name of Nion A.

After a hearing, the examiner of trademark interferences returned a decision awarding priority to the Nion Corporation on August 9, 1943. The decision of the examiner was affirmed by the Commissioner of Patents on April 4, 1944. Nion Corporation v. Burroughs Wellcome & Co., 61 U.S.P.Q. 95.

It is the contention of the plaintiff that this decision of the Commissioner of Patents was erroneous, and the plaintiff is dissatisfied with it. No appeal was taken to the United States Court of Customs and Patent Appeals from the decision of the Commissioner of Patents.

The only shipments made by defendant of its product under the name Avicaps were those mentioned wherein such shipments were made to Cuba prior to the filing of the application by plaintiff with the Commissioner of Patents. The labels were in Spanish and were placed on cartons, the cartons were enclosed in larger boxes which were not opened until they reached their destination. Shipments were made either directly or to forwarders, but in either event the boxes remained unopened until they reached their destination in Cuba. The defendant specifically withdrew any claim that it had perfected the trademark Avicaps in Cuba.

The plaintiff sold a liquid form of Avicap in 1940 or 1941 under the name of Avinal. On June 25, 1942, the defendant, by letter, acknowledged it had notice of the use in interstate commerce of the trademark Avicap by the plaintiffs.

■ It is clear that the defendant sold the same product in the United States under an entirely different trademark: to-wit, Nion A, as established by the price list furnished druggists. It is clear, under the facts, that ownership of the trademark Avicap, as required by the Act of February 1905, 15 U.S.C.A. § 81, was in the plaintiff.

It cannot be said that ownership can be secured in a trademark which has never been attached to any articles in interstate commerce which were visible to the eye, but which were securely packed in boxes sealed and shipped out of the United States. This would leave the door wide open to fraud if such were the rule. The evidence shows that the plaintiff made an exhaustive and comprehensive search of records in the Patent Office, commercial publications, wholesale drug catalogs and were unable to find any individual, company or corporation making use of the word Avicap or any similar name. Can it be said that the plaintiff should have opened the boxes of the defendant—which would have been the only way to determine the use by defendant of the name Avicaps—in order to justify ownership?

The fact that the defendant had sold the same product under the name Nion A in the United States, and had so listed its product on its price list to druggists to identify it, is strong evidence that it did not consider it had any claim of ownership to the trademark Avicap or Avicaps. To grant defendant's prayer would mean that plaintiff would be estopped to use the only name, Avicap, under which it has sold its product, and would permit the defendant to use both or either Avicaps or Nion A as

the trademark. The slightest effort on the part of defendant would have disclosed the filing of plaintiff's petition on May 19, 1942, for registration of the trademark Avicap in the office of the Commissioner of Patents. During the lapse of over three months the defendant made no effort to advise the plaintiff of its claims, and during this period valuable good will attached to the name Avicap, and the trade became familiar with this mark over the United States.

 The defendant knew of the plaintiff's claim of ownership of the trademark as early as June 1942. It is the opinion of this court that if the defendant had a claim it was lost because of the delay in asserting it. The doctrine of laches is applicable in trademark actions.

A similar situation arose in Re The Farmers Manufacturing Company v. W. R. Harrison & Co., 96 O.G. 2062, Decisions of the Commissioner (1901) page 127. Harrison & Co. shipped two machines marked "Cyclone" to a customer or agent in Mexico. No other machines were so marked until December 1900, and the case rested upon shipment to Mexico.

"If it constituted such adoption and use of the mark as to give them a common-law right to it in this country, they must prevail. Otherwise the decision must be in favor of The Farmers Manufacturing Company." (Quoted from the decision).

The decision further states:

"The trade-mark statutes do not create a right to a mark where none existed at common law, but merely provide for the registration of such marks as have become property by common law if they have also been used in commerce with foreign nations or the Indian tribes. It is well settled that use in a foreign country without such use in this country as to give a common-law right to the mark here does not entitle a party to registration. (Richter v. Reynolds, C. D., 1894, 260; 67 O.G. 404; Leprince v. Iler & Morris, C.D., 1900, 103;

92 O.G. 189.) In these cited cases it was also held that limited sales in this country by a foreign manufacturer upon especial orders to supply particular customers did not give a common-law right, since they did not constitute a use of the mark 'in such circumstances as to publicity and length of use as to show an intention to adopt it as a trade-mark.'

"While a case where the goods were manufactured and marked in this country, although sold abroad, may properly be regarded as standing upon a different footing from a case where they were both made and sold abroad and might in some cases be held to establish a common-law right here, the business must be carried on with such publicity as to indicate to others here an intention to adopt the mark as a trade-mark. The single shipment to Mexico is not believed to have been such public use of the mark as to establish the right of Harrison & Co. to it."

And further: "It seems clear that such secret use of the mark could not inform others in this country of their intention to adopt it as a trade-mark. The personal intentions of the members of the company are inconsequential so long as the mark was not actually used in such a way as to inform others in this country of their intentions. The right to a mark arises not from the intention of the user, but from the manner of its use. Even if the shipment to Mexico on July 3 be regarded as a bona fide sale of the machines, a question not free from doubt, it was not made under such circumstances as to establish the right of Harrison & Co."

The decision of the Patent Office is reversed and the Commissioner of Patents is directed to register the word Avicap to the plaintiff as a trademark for use on vitamin capsules as set forth in plaintiff's application for trademark Avicap.

Plaintiff will prepare Findings of Fact and Conclusions of Law within 10 days after the filing of this opinion.